Grace Community Church, Community Church Assemblies of God v. Department of Revenue. For the Appellant, Mr. Siegel. For the Appellee, Mr. Young. You may proceed. Good afternoon, Your Honors. May it please the Court, Counsel. I'm Evan Siegel of the Office of the Attorney General and I represent the Illinois Department of Revenue. I'm presenting this directive of claim here this afternoon. Your Honors, there are two reasons that the Court should confirm the decision of the Department and reverse the circuit court, and these are they. Grace Community took no steps in 11 years that it owned this parcel to develop it, and secondly, its actual use of the property in the critical 2007 period that's at issue was not sufficiently a primarily religious use of the property. To rule for the Department, the Court must reach both of those. In either theory, however, the evidence that the Church submitted to the Department did not meet its heavy evidentiary burden, and that burden was solely on the Church. I want to talk first now about the development exception, one of the two rationales that I just mentioned. And the founding principle underlying all of this is, of course, Article 9, Section 6 of the Illinois Constitution, which requires any religiously exempt use of property to be the exclusive use of that property, which the courts have said, of course, is a primarily religious use. There is an exception to that rule, however, when property is undergoing a state of transition or development when a project is taking place, and this is called the development exception, and it is articulated in cases such as Westland, Antioch Missionary Baptist Church, and Lutheran Church of the Good Shepherd of Bourbonnet, all of which we have cited in our briefs. Those cases draw a bright line distinction between, on the one hand, actual development, and on the other, mere intent to develop property. And there's a background principle here that's really dispositive, and that is that intentions are not enough. The Illinois Supreme Court recently had occasion to quote this Court's decision in the Faith Builders case that says that intention is insufficient when it comes to a religious use of property. Indeed, Grace Community concedes in its brief that intentions are not enough. But that's really all that we have on this record, intentions. Revealingly, there's no development on this property between the year 1996, when the church obtained the property, and 2007. Now, Grace Community, to be sure, admits that it took steps towards adaption or development, and made efforts at development and adaptation in its brief at pages 13 and 15. But steps and efforts are merely intentions under this Court's decision in the Faith Builders. Remarkably, in 11 years, the church has never even targeted a date for breaking ground. So steps and efforts only represent intention? Yes. It's not actual development. It's something way short. Now, steps can, of course, be significant steps. We can qualify steps. They've said in their brief they've taken steps. But those steps are de minimis here, and therefore they don't qualify. They fall into the intent category under Westland, Antioch, and Lutheran Church of the Good Shepherd. And the fact that there's been just these minor steps distinguishes a case that's critical here, that the church has relied on, called Westland. There, there were four significant facts. First, in that case, just to give the Court some background, involved the construction of a hospital. Very complex undertaking that could take years and did here. First, the first fact in Westland is that the project proceeded rapidly through the planning and design stage. Second, large sums of money were expended in that planning and design stage. Third, there was a master site plan just weeks after the real estate closing. And fourth, construction commenced, that is, there was a groundbreaking, 15 months after the real estate closed, a mere 15 months. Here, we have none of that, so Westland cannot be said to be on all fours. The case that really is very, quite strikingly similar is called Antioch. And that was a case in the first district that involved an essentially vacant property, vacant for four years, where there was no steps and certainly no actual development. There was, in fact, an admission by the property owner that it intended to develop its property once it was financially able to do so. And that's exactly what we have here. Throughout the record, there are plans to do this at some point. The hope is to do it in 2008, when the exemption status changed. And there's absolutely nothing that occurred from 1906 to 1907 of any significance. Critically, I would point out that the First Amendment offers no refuge for the race community here. The church claims that its desire to build debt-free is based on religious principles. And what's more, the race community says that this court can't go behind those religious principles and question them. Well, that is factually and legally problematic. The Illinois Supreme Court made clear, as did this court in the Provena decision, Provena I in this court, Provena II in the Supreme Court, that the court is the ultimate arbiter of whether a property is being used for a religiously exempt purpose. And it's not sufficient just to say, well, these are our principles. Yes, the court must accept a somewhat base value, those religious principles. But the court also has a duty, as the Supreme Court emphasized, to determine whether those principles are bona fide and actual. And here the record doesn't stand up to scrutiny for two reasons. First, the church's bylaws don't say anything about building debt-free. In fact, they mention mortgages and being able to borrow and therefore to go into debt. And second, the pastor's testimony at the administrative hearing, in which he equivocated somewhat, reveals at page C137 of the record that it wasn't religious principles per se, they just, the church preferred not to have debt. And I'm paraphrasing that from that record site. So, on the development exception, the church fits into the category of Antioch, not Westland, and doesn't meet it. And the court should find in favor of the department on that point. Secondly, the actual use argument, once the court moves into this prong, it should also hold that the department... Let me ask you, just from a practical standpoint, the taxes on this property until they went up was $60, correct? Yes. And they go up from $60 to $15,000 in one year. Correct. And they did so because the property was assessed as agricultural, was assessed as... Commercial? Yes. So I'm supposed to accept that it was proper to jump from $60 to $15,000 a year, even though there's absolutely nothing in the record to show that this property was going to be used for anything other than putting a church building on the seven acres. Yes, because of the two rationales that I outlined at the beginning. It must meet the development exception, or the actual use, which I will go into in more detail, is not sufficiently religious. So I shouldn't use any common sense here. I should just say the fact that they had done nothing with the property other than committed to putting a church building on it doesn't matter. Well, being committed is not enough under the law. And also the facts are not exactly clear in the record what triggered the increase from $60 to $15,000. They lost their status as farmland and were changed to commercial. But they also lost, it's not clear the sequence of events, perhaps because of the work that they did on the property, they lost their religious exemption. And when you're exempt, you pay no taxes, and entities lose their exemptions all the time. This court has denied exemptions, and that, of course, precipitates... Weren't they annexed? Wasn't this property annexed into the city? Yes, that was a condition of selling an acre of land and preparing. It's not exactly articulated by the witness. One of the reasons that the annexation occurred was to complete the sale to Sojourn, the women's shelter. Was to do what? I'm sorry, to complete the sale of one acre of around eight acres to a women's shelter called Sojourn, which is on a corner of the property. So the second reason that the court should affirm or confirm the Department is that the actual use, even if everything that was done on the property was religious, it was simply insufficient to be a primarily religious use. And this is a quantitative measure. The court need not decide whether everything that is listed on page A1 of the appellant's appendix, which is page C80 in the record, is or isn't religious. But the fact is that that's only six months of activities in a whole tax year. And in that six months, there were only 12 days of any type of use at all. Eight of those, just eight, featured something called prayer walks, which isn't really explained by the record, by the pastor. And only one of those prayer walks was with the full congregation. I'm sorry. What was the primary use of this property? The primary use of the property was not a use. It was vacant. Twelve days a year only. So the primary use is no use. That's correct. And under, Your Honor had asked before, I think, about agriculture, transitions, different statuses. Of course, to obtain an agricultural farmland assessment, it's not an exemption, certain activities have to take place on the property. Just as here, in the exemption context, certain activities, religious in this instance, must take place. But there just weren't enough of them. These 12 days, eight with prayer walks, one with the full congregation, is hardly primary because if you do the math, those 12 days or eight days are really only two to three percent of the entire tax year. And this Court has held in the Calvary Baptist Church of Tilton case that one of the factors that made that property religiously exempt was the fact that there were Bible study classes four times a week. That's 208 times a year. Also, there's a suggestion in the Faith Builders case where the Court was examining the religious intents and purposes of a child care center where the desire to educate preschool children religiously matched up with other things that children learned, like ABCs, social skills. And the Court held that evangelizing children at the preschool age was one of 11 different things that the preschool accomplished. So, again, a very de minimis religious use. And certainly in the charitable exemption context, which is in elegance, this Court and other districts of the appellate court have quantified charitable use in the arena of health care to determine if a health care facility in the Riverside case gave sufficiently charitable care. And, of course, in the Provina case to determine if the care of the indigent was sufficiently charitable. And it wasn't at less than one percent. Counsel, do you know if Grace ever had a religious exemption on this property? It seemed to me from something I read, it seemed to me that they didn't really bother getting the religious exemption because the assessment is farm ground, taxes were only $60, so they didn't bother with all the paperwork. I believe that they did, Your Honor. What year would that have been? In 07, when this began. Okay, they applied for a religious exemption. Is that what started all this litigation then? Yes, they applied to the Sangamon County Board of Review. Right, and the Board of Review granted it. Correct. And then the Department of Revenue reviews that and I guess decided, no, they shouldn't get it. Exactly. So that was the first year they were applying for a religious exemption. It may be. It's not clear from the record if it was the first year. But as a practical matter, once you have an exemption that's recognized by the Department of Revenue, which reviews all of these from all of our counties, there's a form to review a community year. The box is checked. It's reviewed at the county level and then it's reviewed by the department's agency that handles this as well. Department within the department, I should say. I just wanted to point out this low level of use, 8 to 12 times a year on the property and non-use on 353 other days stands to reason, given the fact that the church has admitted that it primarily uses for its religious services the Illinois Retired Teachers Association here on Walnut Street. That's its mainstay. That's its locus of religious activities and they don't deny that. That is also on appendix page 8-1. In the Calvary Baptist Church case, this court held that the stated place of worship, whether it's just for Sunday services or for more than that, the stated place where church services, where religious services occur is determinative. So for all of these reasons, we would urge the court to confirm the department. Let me ask you a question. If 2007 is the first request for a religious exemption and if in 2007 the only use of the property is for religious purposes, though as you've indicated it's a very modest, not doesn't really matter, does it? Because by my calculations, this land may have sat there for 19 years during a period of time within which somebody thought there was going to be a church built there. At least for a decade after they got the deed, I guess. Or it will be seven years from 2000 to 2007. But if we're only looking at the time forward, do you have to give them some time to develop? Because you're only talking about one tax year. If I get the deed, when did they get the deed? 1996. 1996? They got the quick claim deed? Yes. Okay. An 11 year period. So an 11 year period, there's essentially inactivity as far as you know? Yes. And no request for religious exemption? I don't know if there wasn't a request for religious exemption. The record shows a total absence of development activity. I thought it was being farmed, though. You're correct, Justice Turner. It was being farmed until 2005. Three or four of the acres of the eight. A portion of it was being farmed and I think that explains why it had an agricultural assessment rate. And wouldn't it also, counsel, explain why they hadn't made a request for a religious exemption? Because it was being farmed, therefore it was being used for agricultural purposes. Well, a portion of it was being farmed, but there was a shed on the property. It's not clear when it was built. It was destroyed in a tornado in 2006. It was rebuilt. They stored church documents on there outside of this tax year. Just to connect you, just to clarify, the answer to your question depends upon whether we're talking about the development exception, my first line of argument, or actual use. The cases under the development exception recognize that you can't build an expressway, or a hospital, or an office building in a tax year. And so those cases give some leeway, if you will, to what happens a couple of years around the tax year prior. So the hospital in Westland, for instance, I mentioned that there was a 15-month window from the real estate closing to the breaking of the ground. But the breaking of the ground in Westland, which didn't happen in Antioch, is really significant and it didn't happen here. Unless the Court has further questions, I'll come back on the proposal. You say intention to develop alone is not enough, correct? Intention to develop? Alone is not enough. Land is not enough, yes. Alone is not enough. Okay. Has the Supreme Court said that, or is it just two appellate court decisions of your side that have said that? It's a series of appellate court decisions. Off the top of my head, I will check this and get back to you, I can't think of a Supreme Court decision, but Westland, a 1987 appellate court decision, Antioch, which is older, and the Lutheran Church case, they're all appellate court decisions, and they recognize the development exception. Has this Court said that? I do not think so. Okay. You can check that, too, and we'll get back to you. Thank you, counsel. Mr. Young? Please the Court. Dwayne Young for the Appellee Council. The two-prong test is first, ownership, and that's not an issue here. The second prong is exclusive use. That's where the nuances come into play. Under exclusive use, we can look at actual use, or as the Westland case and others have promulgated the nuances, they allow for the development exception. So we're really focusing on use. And I think, Justice Knecht, your question was a pointed one. The only use in this situation was religious uses or uses that the church used for neighborhood activities, its own church uses and those kinds of things. Counsel refers to a quantitative test. Now, there is nothing anywhere that says that the use has to be intensive or extensive or full-time or wall-to-wall or any such thing. It can become, I can understand where he's coming from. For example, in the Provena cases, which was decided here, if you've got a small room within a hospital that is engaged in some sort of idiomocenary or charitable activities and you're trying to exclude just that part of it, you could quantify it, and I think that's what the Provena case was about. But that's not what this case is about. This case is about an undeveloped piece of property that has basically only on it a small shed that they did use for meetings, some meetings. They did use it for some counseling for residents at the Sojourn House, which was next door. And that's really where all the mischief started. Justice Turner was correct. This property was being farmed for a number of years after it had been deeded to it by the mothership, so to speak, out of, I think, Springfield, Missouri. They gave it to the local congregation to develop eventually. It had been farmed for a period of time. Well, let me ask you, do you think Antioch is distinguishable, or are you just saying we shouldn't follow it? You know, I confess I've not refreshed my recollection on this specific case. Well, I might have it mixed up, but I think that's the one where essentially the church owned the property, or maybe it wasn't the church, but whatever the charitable entity was, owned the property, said their intent was to develop it, nothing happened. I think that's the case that says that. No, I agree that just pure intent alone, and that's been expressed in a number of cases. But in this situation, we've gone far beyond that. They've developed plans. There's infrastructure to the extent of some $20,000 done. There were several thousand dollars paid. What's the infrastructure? The water lines and sewer lines that were put to the property, which was part of the annexation, which was necessary to allow Sojourn House to build next door, which they, in fact, were facilitated because they wanted to be there for the single moms. But water lines and sewer lines wouldn't be unique to a church, to a religious... No, but that's part of the development. ...or any kind of development. But they would need that for the church. And so that was part of the development for the eventual church. And again, here... Yeah, but you would need it if you were going to put a grocery store... Absolutely. Yeah. No, I agree. A bar... It's also a church. Yes. So it's part of the development for the church itself. And in this instance, we had a tornado that did come through. There's the Acknowledged in 2006, and they lost all their records in the store, and they had to rebuild. And as a result of that and some of the expenses around that and some code changes, the record says they had to start revamping their whole architectural plans and the footprint for the building that they expected to put up there. But the primary delay in this was, as the pastor testified, it was the conviction of the congregation that they were going to build that free. And what we hear in the news these days, that's pretty smart, it seems to me. That's certainly a laudable goal for them to try to go in that direction. Mr. Young, do you know, was 2007 the first year the church applied for a religious exemption? Do you know? It is. And prior to that, it was zoned agricultural or assessed as agricultural property. And was it their position they didn't need to bother since the taxes were so low? What is, plus part of what you can do is you can drag Ned in a couple of previous years once you make your application. And so as was recognized, the Sojourn House development came up, the annexation came up, and suddenly the taxes went from $60,000 to $15,000 a year, which in this situation has become confiscatory because, as you recognize, there's a tax deed proceeding pending here, and the church is going to lose everything unless the exemption is upheld here because the whole project is basically gone because they haven't had the money. And the monies that were dedicated and given for building a church building, they can't evade those funds if they're designated for buildings. I didn't see anything in the record. There was no testimony at all at the hearing about the amount of those funds that had been collected. I don't remember anything about that either. Wouldn't that be part of development? I mean in the sense that if part of the evidence is we've made considerable progress toward raising enough money to proceed with groundbreaking or additional architectural plans, but we don't want to spend that unless the tax part is resolved. Still, we've raised this. Right. I don't remember anything about the amount of money that was being held. I know there was a number of amounts that was testified. They paid attorneys to handle the annexation. They paid the engineering firm to do the engineering work for the infrastructure. They paid $27,000 for the water and maybe the sewer that comes to the premises so that there was a significant amount of money that had been expended for actual development. I guess what troubles me more than anything else is that the department put on no witness, not one document, not one scintilla of any kind of evidence to contradict what the church's clear testimony was, is that this property had been dedicated wholly to the use of its activities, including neighborhood children activities and giving out school bags for children and the prayer walks and the congregational meetings and the work with the soldier and house and all these other things. There was nothing, ever. They're not contesting that. I don't think they're contesting that. Their position is that's not enough to have 12 days of activity. That's my whole point. That leaves us now with an administrative law judge then who is going to decide to think solely on her own prejudice, her own preference on what she thinks should have happened to it. The question is use, and the only use was testified to as clearly church activities and those activities towards development. But what about the issue that it has to be a sufficient use? You're not buying that. There is no law that requires a level of use. Well, there are the cases that say intent to develop is not enough. No, no, that's right. But we went way beyond that threshold. And so for the department just to basically sit there and sneer at the evidence and saying, well, we just don't think that's enough, we don't think that's enough, we don't think that's enough, there's no standard for the administrative law judge to decide, and worse yet, on appeal, what is this panel going to decide? Counsel, if a landowner other than a church had a witness testify, and you may correct me, maybe it was more expansive, some counseling, some prayer walks, a couple of gatherings to hand out items to neighborhood children, no one would be surprised that a witness other than a pastor or a litigant other than a church, somebody would say, well, that's pretty scant evidence. You don't automatically believe the scope of what's testified to. You believe, yeah, those things occurred, but what does that mean? It went beyond that. They stopped the farming because you can't do anything with the least sort of yield profit. They stopped all of that activity. They just let it go to grass. They just made it like into a park, at least the temporary basis of its use so that they could accommodate these other activities. Basically going down those kinds of activities and not, you know, the pastor even testified, people came along and said, hey, can we show cars there on the weekend, sell cars? We can make some money. Mr. Siegel is arguing 12 days out of 365 days a year is not very much, and then as to the remaining 353 days, it's non-use. I think that's what his argument is. That appears to be part of it, but part of it also is the pastor said, look, all my records, my calendars were destroyed. I reconstructed what I could, you know, and that's what I did from, you know, basically from memory, so he had at least, you know, a period of time that he was able to say, well, we did do this on the property. Well, the evidence is 12 days, though. Is that enough, 12 days? Yes. I think one day would be enough if there was no other. Could you at least say that all 12 of those days were religious, and I think there's some conflicting testimony. That's enough. If there was only one day, I think it's enough. If there's no other activities with a view toward profit, that would be a foul. Well, then he must be wrong when he makes the argument that non-use doesn't qualify for the exemption you're seeking. I think that's what he's arguing. Non-use. You must be saying that's not the law. I'm saying that non-use, coupled only with an intent to someday develop, isn't sufficient. I acknowledge that. That's the case. But this situation goes far, far beyond that. You're saying, I guess, modest or even minimal use plus an unrebutted intention to build. Correct. Ought to be enough. Absolutely. But what if the intention, this is where I'm having a little bit of trouble, what if the intention to build is unrealistic because they have nothing in their fund to build the church, and they're not willing to take out a mortgage to build the church? So, in other words, they've been saving money since 1996. They've been getting donations, and they had a building fund. We have no idea if there's any money at all in the building fund because nobody testified to that. So, I mean, eventually where do you draw the line? There's no use. Or perhaps does at some point the burden shift to the department? I think the burden, it's clear under the case law, the burden's on the person who's seeking the exemption. Oh, I understand that. But we met our burden, and there was not once until of evidence of any type, kind, nature, or description that was introduced by the department against us. So now we're left with a record that's wholly composed of what the evidence of the taxpayer is. And that's my very point then becomes what is the administrative law judge or this panel on appeal going to use to make the judgment then? Are you going to say that the evidence was overwhelming, it was only, you know, in one direction, there's only one conclusion that you can reach, or is the administrative law judge going to be allowed to substitute her own private prejudices or preferences or opinions or whatever it is, and then aren't we at the same place where we're asking this panel to collectively accumulate its own collective prejudice or opinion or preferences and make a decision? Didn't the Supreme Court and Provena say it is the job of the appellate courts to make a determination of whether property is being used for religious purposes? And it may not have been Provena because that was a charitable case, but there's another Supreme Court case where they say that. Certainly this court sits in review on what the agency did. I understand there's no deference given to the trial court, you know, although I think the trial court got it right in this case where he said that nobody ever put any evidence to the contrary and we have to stick with that. But you still have a burden of proof to show by clear and convincing evidence that you're entitled to the exemption. That burden never shifted from you. And if the ALJ decides you didn't put on enough proof, the department doesn't have to do anything. How can the ALJ say that? That's my point, is they can't. They acknowledge that the pastor was a credible witness, they had nothing else. You know, she acknowledged that in her opinion. So if we have nothing else, you know... But what's the evidence, that they intend to build a church? And they used this property solely for church purposes, charitable purposes for the church. That's the only use. They did not use it with a view toward profit, ever, during the relevant time. Well, we're right back to where I was a few minutes ago when I asked you. So non-use, in your view, is not relevant for this court in resolving this issue? I'm saying non-use is not present in this record. Well, how do you explain those 353 days where it's not used? Well, that's what I started out. There is nothing anywhere that requires that the use be intensive, or extensive, or full-time, or any such thing. Nowhere. It's the department. The ALJ just made it up in her mind. Well, I don't think it's enough. And I don't think that's a rule of law. That's just the rule of man. Just someone making it up out of their own, pulling it out of their own head, saying, well, I don't think it's enough. And that's why I'm saying, what standard can this court use? Yes, you have to sit in judgment upon the ALJ and determine whether she made a right decision or not. But I'm saying she could make no decision except, as the trial court found, because there was not once until of evidence to the contrary. We're stuck with what the evidence of the church put on was. It was not used with a view towards profit. It was not used for any non-church use. And there was significant steps being taken toward development. There was money being expended. There was money being raised. All of those kinds of activities. Well, it's true generally, but we have no idea how much money was being raised. What if it's going to take 20 years to raise the amount of money that they need? You don't think that matters? To take this property out of the tax rolls for 20 years with no? Unless you declare a rule of law in this opinion, I don't know where you're going to look to to find out such a rule of law that would apply. There is no such requirement. I guess the issue then becomes, does a religious organization have to develop ground that they own in order to retain a religious exemption? Or if there was? Vacant land wouldn't qualify, would it, for a religious exemption? If it was being, if the steps were being taken toward development. Well, right. I would think that it would have to be during a reasonable period of time. Let the legislature pass a law that says, you know, you can only have a religious exemption for five years, you know, unless you're actually going to start, you know, breaking ground or something. But there is no law out there that says you have to do that. But you agree if it was just vacant ground, with no intention to develop it and the church was just holding it, they would not be entitled to the exemption? Absolutely. I agree with that. Okay. Absolutely. No question about it. But where it's actually being put to some religious or charitable use, the only use that it is being put to has to do with the activities of the church and steps are being taken toward development. So while they were farming it or having it farmed, they wouldn't qualify for a religious exemption? No. Even though they didn't take the profits from the farm? Correct. No. If you're leasing it out, you lose your exemption. You know, there are cases where, you know, the rectory is leased out to somebody else and you can lose the whole exemption for the church. Tell me about the, I'm sorry, I was just going to say they would have been better off leaving it in farming and have it assessed as farm ground. You're absolutely right, except for the opportunity to have the sojourn house come along and they had to annex and then the taxes go from $60,000 to $15,000 and they realized suddenly they found themselves in a confiscatory place where the taxes are going to be taken. And your position really is the sale of that land or the giving of that land to sojourn and the annexation, in a sense that was for a religious purpose because of what the kind of work sojourn does that would be supported by a congregation. Yes. And the pastor testified that they had a close relationship with sojourn and they wanted to support them and they did on an ongoing basis. The next question is though, was the development of the sewer and water, could one argue that that was exclusively for the purpose of providing what was necessary for the building of sojourn house? Or is it that development done in such a way that it benefits the whole property? It's my recollection that to get to the sojourn house, you go by this property and at least the mains are there, so it benefited both. But the actual running of the lines is to the developed property that was sold? Correct. Okay. Correct. Although that was necessary to enable it to happen. Okay. And did sojourn pay them for the land? Do you know? I don't know. I think in some place it said they bought it, so that seems to imply that there was some sort of consideration. I see my time's about up unless you have any other questions. I'll respectfully ask that you affirm the trial court. Thank you. Thank you. If the ALJ finds the pastor to be, or the witness to be credible, and if there is religious activity that's modest at best, and it's not being used for a for-profit purpose, and there have previously been blueprints and plans, and you do have water, and I guess electricity is what? Water and sewer. So you've got those mains, and that is development. Whether it was development just for the benefit of sojourn, or it's development that wouldn't have to be redone to construct, and they're stating an intent to build. Why isn't that enough? It's not enough under Westland, and that is one of the standards, because the last development activity that was shown, all that they put into the record were architectural blueprints that were drawn up in March of 2011, 11 years ago. And those renderings were... Well, except that we have to look back really from 2007, not from 2011. And looking back from 2007, we have the intervening event of the tornado, and some change of the codes. You have to look back to 2007, a few years under the Westland line, for the development exception, not for the actual 8 or 12 uses. But they didn't take any steps to change those architectural plans that were rendered, which were obviated under changes in building codes after the tornado. They haven't shown that they've done anything at all, and as Justice Pope pointed out, there's been no testimony about how much money they raised. The records who gave may have been destroyed in the tornado in 2006, but they must know what's in their bank account, what's their budget, what's their timetable, what are their goals, what are their intentions. The department doesn't control any of this information or knowledge, and that's why the department doesn't have the burden in this case, and in most administrative cases, to put on an iota of evidence. They have the records. If they had a cabin and a lake on this land, and they used it extensively from May to September for youth camps and youth activities, church, I mean, clearly church-related activities, and they locked the door and shut off the electricity, and it sits unused totally for the other seven years of the month. Would it qualify for a religious exemption? It may well. Because the standard is, counsel is mistaken that there is no standard. The standard is the Illinois Constitution, and it requires a primarily religious use, and this court doesn't have to identify a some certain or a percentage and draw the line as a legislature, but 58% of the months from May to October are enough. All it needs to do in this case is say, is rule, that eight or 12 days, which is 2% to 3% of the calendar year, is not enough under the actual use standard. And the Supreme Court has said in Provena, which is a charitable and religious case, that the court is the ultimate arbiter on these questions. And that was the five-justice-unanimous portion of the Supreme Court's decision in Provena, quoting this court in the faith-builder's case. Another way to think about this non-use and 12 days of use idea, 353 days versus 12, is to analogize to the health care context and look at the 350 days of no use as equivalent to a hospital or a clinic providing medicine, fee for service, and the 12 days being the focus of the constitutional and property tax code question, was it charitable or was it religious? And in this case we have a very de minimis religious use, and the standard is exclusive or primary religious use. A small room, counsel talked about a small room in a clinic. But there's no other use, I mean it is exclusive. There is no other use. I mean I think that's their strongest argument, there is no other use here, isn't it? I mean it's not like it's being used for profit or any other thing, it's only being used, even though it's only on certain days, but the only use has been connected with the church. Correct. The denominator is 365, is 12. I see my time is up, if I may just finish my... I wanted to say one other thing, if it's okay with my colleagues. It seems like in Provina, what the court was saying is, here you have a profit, for profit kind of a use, and you have the charitable portion. And the charitable portion wasn't enough to exempt their property, but they also had a profit use. And here, there is, that component is missing. But the analogy I think is that the profit is like the non-use. It's not, in Provina, the profit use was not charitable. Here, the 353 days are not religious. And the last thing I just want to say is that I was not able to find a Supreme Court case on the development exception, or this court. But if I find something back in my office, I will certainly send a post-covenant letter to the court of counsel. So for all these reasons, we would ask the court to confirm the decision of the department, and reverse the Supreme Court. Thank you. Thank you, counsel. We'll take this matter under advisement.